**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**ROLDY FRANCOIS,**

        **Plaintiff,**

    **v.**                              **CIVIL ACTION NO. 3:18-CV-179
(GROH)**

**MR. ROLFE,
MS. M. TOMPKINS,
MS. BROWN,
DR. HUMY,
DR. TROTTER,
P. A. ARMEL,
OFFICER JOHN DOE,
S.I.S. LT. J. SQUIRES,
MR. S. KALLIS,
MR. F. ENTZEL,
MR. RARDRA,
P. FOLTZ,
OFFICER T. SAPP,
OFFICER B. BENSON, and
MR. E. HOWELL,**

        **Defendants.**

**REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

On November 1, 2018, the *pro se* Plaintiff, an inmate[1] at McCreary U.S.P in Pine

Knot, Kentucky, filed the above-styled action pursuant to the Federal Tort Claims Act.

---

[1] Plaintiff was convicted in the District of Rhode Island, case number 1:10-CR-38, of all seventeen counts of an indictment which charged him with being a felon in possession of a firearm (Counts 1 – 4), possession of a firearm with an obliterated or altered serial number (Count 5), making false statements to obtain firearms (Counts 6 – 9), and possession of an identification document with the intent to use the document to defraud the United States (Counts 10 – 13, 14 – 17).  His conviction was affirmed by the United States Court of Appeals for the First Circuit, in United States v. Francois, 715 F.3d 21 (2013), *cert. denied*, Francois v. United States, 571 U.S. 992 (2013).  According to the Bureau of Prisons' inmate locator website, Plaintiff is scheduled to be released on September 28, 2020.

ECF No. 1.[2]  On November 2, 2018, the Clerk issued a Notice of Deficient Pleading which advised Plaintiff of the requirement to file such actions on the court-approved form, a copy of which was included with the Notice.  ECF No. 4.  On December 13, 2018, Plaintiff filed the court-approved form, with seven additional pages. ECF No. 10.   The complaint asserts that while Plaintiff was incarcerated at FCI Hazelton, he was subject to a security pat down by an officer, and that during the pat down, the officer sexually assaulted him by making contact with Plaintiff's genitalia, causing unspecified "physical injury" to his testicles, and "mental and emotional trauma".  Id. at 9.  Among other requested relief, Plaintiff asks for a preliminary[3] injunction which orders the Defendants to change his classification to medium and transfer him to a lower security institution.  Id.

This matter is pending before the undersigned pursuant to 28 U.S.C. § 636.


## II.    STANDARD OF REVIEW

The Fourth Circuit reviews "a district court's decision to grant a preliminary injunction under an abuse-of-discretion standard."   International Refugee Assistance Project v. Trump, 883 F.3d 233, 255 – 56 (4th Cir. 2018), as amended (Feb. 28, 2018).

The standard for granting injunctive relief was articulated by the United States Supreme Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that
> he is likely to succeed on the merits, that he is likely to suffer

---

[2]  All ECF number cited herein are in 3:18-CV-179, unless otherwise noted.
[3]  Elsewhere, Plaintiff also requests a "preliminary and permanent injunction" as to the same issues. ECF No. 10 at 16.

2

> irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a preliminary injunction:

> The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

Int'l Refugee, 883 F.3d at 256 (citing WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citing Winter, 555 U.S. at 7)). This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d. 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

## III.     ANALYSIS

In regard to Plaintiff's motion for an injunction, it appears Plaintiff cannot meet the four-part Winter test for the issuance of a preliminary injunction and his motion should be denied.

First, Plaintiff has not shown he is likely to succeed on the merits in regard to his claim. The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States.  The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA.  <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953).  The provisions of the FTCA are found in Title 28 of the United States Code.  28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Waiver of the United States' sovereign immunity pursuant to the FTCA is subject to several requirements and limitations.  One of those is found in § 1346(b)(2), which provides that:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injuries suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18.

Subparagraph (2)(D) of section 18 U.S.C. § 2246[4] defines a "sexual act" to mean, among other definitions, "the intentional touching, not through the clothing, of the genitalia of

---

[4]  18 U.S.C. § 2246 provides in its entirety:

As used in this chapter--
**(1)** the term "prison" means a correctional, detention, or penal facility;
**(2)** the term "sexual act" means--
**(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
**(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
**(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

4

another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."   By contrast, the term "sexual contact" means, "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. § 2246(3).

Pursuant to the provisions of the Prison Litigation Reform Act, codified at 42 U.S.C.§ 1997e(e), a prisoner's civil action for mental or emotional injuries suffered while in custody, requires "a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

---

**(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

**(3)** the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

**(4)** the term "serious bodily injury" means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty;

**(5)** the term "official detention" means--

**(A)** detention by a Federal officer or employee, or under the direction of a Federal officer or employee, following arrest for an offense; following surrender in lieu of arrest for an offense; following a charge or conviction of an offense, or an allegation or finding of juvenile delinquency; following commitment as a material witness; following civil commitment in lieu of criminal proceedings or pending resumption of criminal proceedings that are being held in abeyance, or pending extradition, deportation, or exclusion; or

**(B)** custody by a Federal officer or employee, or under the direction of a Federal officer or employee, for purposes incident to any detention described in subparagraph (A) of this paragraph, including transportation, medical diagnosis or treatment, court appearance, work, and recreation;

but does not include supervision or other control (other than custody during specified hours or days) after release on bail, probation, or parole, or after release following a finding of juvenile delinquency; and

**(6)** the term "State" means a State of the United States, the District of Columbia, and any commonwealth, possession, or territory of the United States.

Plaintiff has not established that he suffered a physical injury during the pat down on June 14, 2017.  According to Plaintiff, the initial act caused him an unspecified[5] "physical injury to his testi[cles], and subsequent acts by other staff impacted his mental and emotional health.  ECF No. 10 at 9.  Plaintiff submitted no documentation to support a finding that he received an injury to his testicles, as a result of the June 14, 2017 pat down search.  In the Regional Administrative Remedy Appeal which Plaintiff filed on June 16, 2017, he did not report any physical injury occurred on June 14, or June 15, 2017.  ECF No. 1-2 at 2.  Rather, Plaintiff asserted that he first experienced pain on June 16, 2017 when he "woke up with pain in my testicles when I urinate."  Id.

By contrast, Plaintiff submitted substantial documentation of his complaints to and about Psychology Services at FCI Hazelton, including: a July 26, 2017, email from Plaintiff to Dr. Trotter and Dr. Trotter's July 27, 2017, response [ECF No. 1-5 at 2]; a July 27, 2017, email from Plaintiff to FCI Warden complaining about his treatment by Psychology Services [ECF No. 1-5 at 3]; an August 14, 2017, Administrative Remedy Request, case number 912591-F1, about the Psychology department [ECF No. 1-6 at 1]; an August 15, 2017, letter from Dr. Humy to Plaintiff regarding Plaintiff's Administrative Remedy Request, which stated:

> At this time, the only mental health complaint you have reported was in an email on July 26, 2017 when you stated you have had trouble sleeping due to the sexual assault incident. . . Further, as you have not disclosed any other significant mental health complaints nor have you exhibited any mental health symptoms either on the compound or when

---

[5]  Plaintiff asserts that on June 23, 2017, his testicles were visually examined by P.A. Armel who concluded that there was "nothing wrong with [P]laintiff," although he complained of pain.  ECF No. 10 at 13.  Plaintiff further claims that he was examined on July 27, 2017, by a medical staff member, Defendant John Doe, who told Plaintiff "the pain would not [go] away for [ ] a few days."  Id.

you've seen Psychology you do not meet the criteria for a
mental health diagnosis indicative of a need for a higher
Mental Health Care Level than you [are] already assigned.

[ECF No. 1-5 at 4]; a September 6, 2017, letter from Warden S. Kallis informing Plaintiff

that he does not meet the criteria for an increased mental health care level or require a

single cell [ECF No. 1-6 at 4]; a September 22, 2017, Mid-Atlantic Regional denial of

Administrative Remedy 913571-R1 [ECF No. 1-7 at 2]; and a November 24, 2017, Central

Office Administrative Remedy Appeal in case number 913571-A1 [ECF No. 1-8 at 1].

The contrast between Plaintiff's complaints of substantial mental and emotional

injury and bare claims for physical injury is stark.  Plaintiff failed to provide any

documentation of his alleged physical injury comparable to the documentation of his

alleged mental and emotional injury.  Moreover, the only alleged physical injury Plaintiff

claims was pain in his testicles when urinating, which he alleges he only experienced two

days after the alleged sexual assault.   Because Plaintiff is unable to demonstrate a prior

showing of physical injury or the commission of a sexual act, as that term is defined by

18 U.S.C § 2246, he cannot prove that he is likely to prevail on the merits of his claim.

Second, Plaintiff has not demonstrated that he is likely to suffer irreparable harm

in the absence of preliminary relief.  Plaintiff asserts that he was the subject of various

acts by the defendants at Hazelton FCI, starting with the pat down search on June 14,

2017.  Among other relief, he sought to be transferred to another facility, with a lower

security level.  Subsequently, Plaintiff was transferred, albeit to McCreary USP, a high

security penitentiary.  Plaintiff claims broadly that he experienced "fear" at Hazelton and

that he was afraid to speak to any staff at Hazelton about the incident and his physical

and mental health.  ECF No. 10 at 9, 14.  However, because Plaintiff was transferred to

McCreary U.S.P. and no longer has contact with officials and staff of Hazelton, it is unclear how he could suffer irreparable harm at the hands of Hazelton officials or staff.

Third, Plaintiff has failed to show that the balance of equities tips in his favor. Despite his allegations of harm, the documents Plaintiff has submitted do not support his claims.  As noted above, Plaintiff submitted several records which document his complaints about his mental health, but none which document his complaints about his alleged physical injury, and none which demonstrate that Plaintiff even suffered a physical injury.  To the extent that fairness dictates an act of this Court, it does not appear that the Court should take any action to enjoin Defendants who no longer have access to or custody of Plaintiff.

Fourth, Plaintiff has not demonstrated that an injunction is in the public interest. Plaintiff has raised no specific grounds which concern the public interest.  Liberally construed, his claims are that Bureau of Prisons employees caused him a physical injury to his testicles, in an act which Plaintiff characterizes as a sexual assault. Further, he asserts he was denied outside counseling services which he claims were necessary following the alleged sexual assault.  However, the documents Plaintiff produced in support of his request appear to demonstrate that Hazelton officials: (1) documented the reported sexual assault; (2) provided Plaintiff with access to psychological counseling; and (3) addressed his concerns with regard to the quality of those psychological services. Further, the documents demonstrate two levels of appellate review outside the institution, by both the Mid-Atlantic Regional Office and the Central Office of the Bureau of Prisons who reviewed the actions taken by Hazelton officials and staff, and found no wrongdoing.

For all of these reasons, Plaintiff has not demonstrated that the public interest requires the injunction he seeks.

Because Plaintiff is unable to meet any of the four parts of the <u>Winter</u> test for issuance of an injunction in relation to his motion articulated in the complaint [ECF No. 10 at 9, 16], the same is not merited.

Moreover, to the extent that Plaintiff's motion to enjoin seeks to mandate action by the Defendants "to score Plaintiff's classification as a medium and transfer him to a lower security level prison," he has failed to demonstrate that he is entitled to extraordinary relief because he has failed to demonstrate that the exigencies of the situation demand such relief.

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for an injunction [ECF No. 10 at 9, 16] be **DENIED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.  A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such

recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Order to the Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED:     December 20, 2018

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE